**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

RUBEN ESCANO,

      Plaintiff,

v.

INNOVATIVE FINANCIAL PARTNERS,
LLC d/b/a INNOVATIVE FINANCIAL
GROUP; JOSH BENSON,

      Defendants.

Case No. 2:23-cv-00277-JHR-GJF

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO**
**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Defendants Innovative Financial Partners, LLC, and Josh Benson (collectively, "Defendants") hereby respond to Plaintiff's Objection to Proposed Findings and Recommended Disposition ("Objection", Doc. 77). For the reasons discussed below, Plaintiff's objections to Magistrate Judge Fouratt's Proposed Findings and Recommended Disposition (Doc. 71, the "PFRD") have no merit and should be overruled.

## I.     INTRODUCTION

This is a case in which Plaintiff Ruben Escano, a highly experienced and uniquely capable *pro se* litigant, seeks to invalidate a settlement agreement he carefully negotiated and voluntarily signed. Plaintiff seeks to undo the settlement because he refuses to accept the fact that the settlement payment he received was subject to a tax withholding under federal law.

The present controversy began when Plaintiff refused to provide the Defendants with a Form W-9 in connection with the settlement. Form W-9 is promulgated by the Internal Revenue Service, and it is the means by which a non-employee payee supplies his or her tax identification

number to a payor, so that taxable payments can be tracked and recorded. *See* https://www.irs.gov/forms-pubs/about-form-w-9. A payee like Plaintiff may refuse to provide a W-9, but the legal consequence of that decision is that a 24% "backup withholding" must be remitted to the IRS to ensure the payee pays their taxes. *See* IRS Form W-9, available at https://www.irs.gov/pub/irs-pdf/fw9.pdf (providing that "[p]ayments you receive will be subject to backup withholding if . . . [y]ou do not furnish your TIN to the requester."). If "the backup withholding turns out to be in excess of" a taxpayer's "actual tax liability," he or she "would be refunded the excess portion of the withheld funds." PFRD at p. 10 (collecting authorities).

Defendants therefore withheld 24% of the settlement amount as a result of Plaintiff's refusal to provide his W-9 as federal tax law required. Plaintiff then claimed the federally required withholding was a material breach, did not cash the settlement check, and refused to dismiss his lawsuit. Defendants then moved to enforce the settlement agreement and, pursuant to a shifting provision in the settlement agreement, sought their fees and expenses for having to do so.

Magistrate Judge Gregory J. Fouratt held an evidentiary hearing on Defendants' motion (along with related motions filed by Plaintiff) on September 19, 2023. Judge Fouratt heard the testimony of three witnesses and argument from both parties.[1] Following that hearing, and extensive briefing submitted both before and after the hearing, Judge Fouratt issued a thorough and carefully-reasoned 37-page Proposed Findings and Recommended Disposition (Doc. 71, the "PFRD"), recommending that, among other things, Defendants' Motion to Enforce the Settlement be granted and that Defendants be awarded $144,065.43 pursuant to the settlement agreement's fee shifting provision.

---

[1] Of note, Defendants sought permission from Plaintiff for their witnesses to appear remotely to minimize expenses related to the hearing, and Plaintiff refused, increasing costs for Defendants, and ultimately himself if Defendants' prevailed.

Plaintiff now objects to the PFRD. Although Plaintiff challenges *none* of Judge Fouratt's detailed factual findings (*see* PFRD at p. 1–17), he nevertheless argues that Judge Fouratt erroneously held the settlement agreement to be legally enforceable. *See* Pl.'s Obj., Doc. 77, at 1–2. Plaintiff's primary argument is that the settlement agreement was an illegal agreement between the parties to violate federal tax law by promising to pay Plaintiff without any backup withholding even though Plaintiff refused to provide a Form W-9 and federal tax law therefore required the withholding.

Plaintiff's objection is meritless. The parties' agreement says nothing at all to even suggest the Defendants agreed to do anything illegal. On the contrary, and as Judge Fouratt expressly found, the parties' settlement agreement says nothing at all about Form W-9 or tax withholding, and the parties made no attempt to "somehow contract[] around federal tax law." *See* PFRD at p. 9, 12. Thus, the "parties had no agreement that IRS requirements would (or would not be) a factor in their settlement." *Id.* at 12.

Nor was there any suggestion that Defendants would do anything illegal in the communications between the parties before executing the settlement. On the contrary, the parties "did *not* agree that Plaintiff's refusal to provide" a W-9 "would not trigger any tax consequences." PFRD at p. 12. And in the process of negotiating the settlement, Defendants "specifically referred Plaintiff to Form W-9 and its associated instructions," *which refer to the withholding requirement on page 1. Id.* Judge Fouratt therefore found that "Plaintiff was on notice of Defendants' withholding obligation before either side signed the Settlement Agreement" and "understood the Form W-9 and its associated instructions." *Id*. at p. 12, 21.

What the record of this case shows is that, despite being placed on notice of the backup withholding requirement, Plaintiff still refused to provide a W-9 on the assumption or

misapprehension that Defendants would violate the federal backup withholding requirement. But they complied. And as Judge Fouratt found, Defendants' compliance with federal tax law did not breach the settlement agreement. Indeed, Plaintiff testified that he came to understand the backup withholding requirement only after signing the settlement agreement, and that, in retrospect, he regrets his quixotic refusal to supply a Form W-9 to the Defendants. *See id.* at p. 21 (asking Plaintiff "in retrospect do you wish you had given them a W-9," to which Plaintiff responded "yeah, probably."). But Plaintiff's regret is no grounds to invalidate a negotiated and signed settlement agreement. Nor is his erroneous—but since corrected—expectation that Defendants would violate federal tax law instead of complying with it. Plaintiff's objection to the PFRD should be overruled.

## II.   STATEMENT OF FACTS

The facts of this case are thoroughly addressed in the PFRD. Rather than repeat those facts here—especially in view of the limited nature of Plaintiff's objections and the fact that he has not challenged any of Judge Fouratt's factual findings—Defendants present the following summary of facts pertinent to Plaintiff's Objection.

Plaintiff filed suit against the Defendants in February 2023, alleging that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, (the "TCPA") and the New Mexico Unfair Practices Act, NMSA § 57-12-3, *et seq.*, ("NMUPA"), by making unsolicited telephone marketing calls. PFRD at 3.

Plaintiff is a highly experienced pro se litigant who has filed more than a dozen lawsuits alleging TCPA violations against various defendants. *Id*. Judge Fouratt found Plaintiff to be "without question to be the most capable *pro se* litigant the Court has ever encountered" due to "subject-matter expertise, familiarity and facility with civil litigation, and overall communication

skills [that] make him well-matched against even the most experienced opposing counsel." *Id*. at 3–4.

The parties began settlement discussions in March 2023, and by April 6, 2023, had reached agreement on the material terms of a settlement. *Id*. p. at 4. The parties exchanged several redlined drafts of a settlement agreement, during which time "Plaintiff proposed changes to *eight* separate provisions" of the agreement. *Id*. at p. 6. During negotiations, Plaintiff expressed that he did not want to provide a Form W-9. *Id.* at p. 4–5. Defendants' attorney Alexander Terepka "referred Plaintiff to the instructions on Form W-9, which include an explanation of reasons why a Form W-9 is required and the consequences of failing or refusing to provide one." *Id*. at 5. The instructions on Form W-9 expressly state that "if you do not return a Form W-9 to the requester with a [taxpayer identification number], you might be subject to backup withholding." *Id*. Plaintiff was therefore "aware of and understood the Form W-9 and its associated instructions." *Id*. at 12.

In the course of negotiations, Mr. Terepka informed Plaintiff, after exchanging several emails about the issue, that "my client can pay the settlement amount without a W-9." *Id*. at 6. As Judge Fouratt found, the parties "did *not* agree that Plaintiff's refusal to provide one would not trigger any tax consequences, . . . Plaintiff and Mr. Terepka neither discussed nor agreed whether the backup withholding requirement would or would not apply to the settlement payment," and "the parties had no agreement that IRS requirements would (or would not be) a factor in their settlement." *Id*. at p. 12.

Based on the "robust, iterative, and careful negotiation process between parties with equal bargaining power," Judge Fouratt found that "at the time he executed the Settlement Agreement, Plaintiff had a complete understanding of the language, meaning, and effect of each and every one of its individual provisions." *Id*. at 7.

The Settlement Agreement makes no mention of Form W-9 or backup withholding. The only provision of the Agreement that addresses taxes is Section 5. *Id*. at p. 9. That Section provides that "Plaintiff agree[d] the Released Parties make no warranty or representation about Plaintiff's tax liability for the Settlement Payment," and "Plaintiff agree[d] that he is fully and solely responsible for any and all of his own tax liabilities with respect to the Settlement Payment." *Id*. Judge Fouratt "specifically [found] that nothing in this section, or any other provision of the Agreement, addressed whether Plaintiff would – or would not – be required to provide a Form W-9, or that he would or could be exempted from the federal law requiring a backup withholding if he refused to provide one. The Court further [found] that § 5 addresses only *Plaintiff's* tax liability, not Defendants.'" *Id*.

"The Settlement Agreement included a standard 'merger and integration' provision, which provided that the Agreement was 'a full and final settlement and release,' constituted the 'entire agreement between the Parties,' and 'supersede[d] all prior agreements and understandings' either party may have had." *Id*. at p. 7–8. "Plaintiff also 'acknowledge[d]' that 'he may hereafter discover facts different from, or in addition to, those which he now knows or believes to be true with respect to both this Agreement and the Action, and agrees that the Agreement shall be and remain effective in all respects as to the Released Claims, notwithstanding such different or additional facts or the discovery thereof[.]" *Id*. at p. 8.[2]

Judge Fouratt found that "Plaintiff could have – but did not – request" that the Agreement

---

[2] The Agreement also contains "a fee shifting provision in which 'the Parties agree[d] that in any matter, motion, or action arising from or relating to the enforcement or breach of any provision of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees and expenses.'" PFRD at 8. The PFRD awarded fees to Defendants pursuant to that provision. Plaintiff does not separately challenge the fee award in his Objection. Nor does he challenge any of Judge Fouratt's many factual findings about how Plaintiff's litigation tactics unnecessarily magnified the cost of this proceeding.

be amended to "clarify either (a) that the parties agree that he need not provide a Form W-9, or (b) that Defendants would *not* deduct a backup withholding as a consequence for Plaintiff not providing a Form W-9." *Id*. at p. 9. Plaintiff also could have insisted—but again did not—that the Agreement provide the settlement consideration would be paid "net of taxes." *Id*. at p. 9 n.11.

Plaintiff testified at the hearing that "since he signed the Settlement Agreement, he learned 'about backup withholding, about the Defendants' obligation to send it directly to the IRS, if you don't give them a W-9.'" *Id.* at p. 21. When asked by Judge Fouratt "whether in retrospect, do you wish you had given them a W-9," Plaintiff answered "yeah, probably." *Id*.

## III. ARGUMENT

### A. Legal Standard

Fed. R. Civ. P. 72(b)(2) permits a party to "serve and file specific written objections to the proposed findings and recommendations" of a federal magistrate judge. If a party makes sufficiently "specific written objections" regarding dispositive matters, the "district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." *See Pablo v. Soc. Sec. Admin*., 2013 WL 1010401, at *1 (D.N.M. Feb. 27, 2013).

The Tenth Circuit, "like numerous other circuits," has "adopted a firm waiver rule that provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *Id.* (alteration in original) (quotation omitted). Moreover, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation"—including Plaintiff's illegality argument—"are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

Plaintiff's only specific challenge to the PFRD is to argue the Settlement Agreement is illegal and unenforceable because the Defendants "agreed to send Plaintiff [the settlement

consideration] as part of the settlement, without requiring an IRS Form W-9 from him" and also agreed to violate the backup withholding requirement when doing so. Pl.'s Obj. at 2. But that argument has no basis in the Settlement Agreement or the undisputed record of the parties' communications before executing that agreement that in no way indicate an intent to circumvent the law. And Judge Fouratt's detailed factual findings, none of which Plaintiff has challenged as having an inadequate evidentiary basis, likewise foreclose Plaintiff's objection.

**B.   THE SETTLEMENT AGREEMENT IS LEGALLY ENFORCEABLE.**

"When it comes to settlements, it 'is the policy of the law and of the State of New Mexico to favor settlement agreements.'" PFRD at p. 18 (quoting *Starr v. Roche*, 33 F. App'x 432, 433 (10th Cir. 2002) (unpublished) (citing *Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc.*, 1988-NMSC-010, ¶ 3, 106 N.M. 705, 707)). "Courts therefore presume that when parties have settled a dispute, they 'intended a complete accord and satisfaction of their respective claims[.]'" PFRD at 19 (alteration in original) (quoting *Bennett v. Kisluk*, 1991-NMSC-060, ¶ 7, 112 N.M. 221, 223). New Mexico courts have routinely refused to invalidate settlement agreements when subjected to the sort of after-the-fact challenges Plaintiff has made here. *Roche*, 33 F. App'x at 434 (rejecting claims that settlement was the product of "mental incapacity, coercion and duress"); *Navajo Tribe*, 106 N.M. at 707 (rejecting arguments that a settlement agreement was void for an attorneys' alleged lack of authority to sign it).

New Mexico courts take an equally skeptical view of efforts to invalidate contracts on grounds of illegality. The party seeking to preclude contract enforcement on the grounds of illegality bears the burden of establishing it. *Pucci Distrib. Co. v. Nellos*, 110 N.M. 374, 376, 796 P.2d 595, 597 (1990). A contract will be held to be illegal only where it was "made for a positively invalid purpose" or had an "unlawful object." *Measday v. Sweazea*, 78 N.M. 781, 783, 438 P.2d

525, 527 (1968); *see also Shaw v. Bd. of Educ. of Vill. of Hobbs, N.M.*, 38 N.M. 298, 31 P.2d 993, 997 (1934). Thus, "[i]f the contract as made could have been performed in a legal manner, the courts will not declare it void and unenforceable because it may have been performed in an unlawful manner." *Measday*, 78 N.M. at 784 (quotation omitted).

Plaintiff does not mention any of these governing legal standards, much less attempt to show they have been met here. Nor could he show that the Agreement had an "unlawful object" or "invalid purpose," even if he had tried. The Agreement's purpose was to settle Plaintiff's lawsuit, not to skirt federal tax law. Tax issues were so incidental to the Agreement that they were confined to a single paragraph that, as Judge Fouratt found, addressed only "*Plaintiff's* tax liability, not Defendants.'" PFRD at p. 9. Per the plain terms of the Agreement, Defendants never agreed to do anything illegal. Plaintiff's objection therefore fails for the simple reasons that he cannot show the Agreement to have an unlawful object or improper purpose. *See Measday*, 78 N.M. at 783 (enforcing a contract where "we have neither an invalid subject matter nor an invalid purpose" because "[t]he contract did not provide for nor require the violation of any law").

Plaintiff's illegality argument likewise fails because "the contract as made could have been performed in a legal manner." *Id.* at 784 (quotation omitted). As Judge Fouratt found, "Defendants were required by federal law to deduct the 24% backup withholding and remit that amount to the IRS." PFRD at p. 20. The "courts" therefore "will not declare" a contract "void and unenforceable because it may have been performed in an unlawful manner." *Measday*, 78 N.M. at 784 (quotation omitted). That is especially true here because it is undisputed Defendants *complied* with the backup withholding requirement. *See id.* (rejecting argument that "the contract is illegal" even where "a statutory violation" of a plumbing permit requirement actually occurred).

Unable to show the Agreement was illegal by its terms, Plaintiff attempts to re-write the contract to fit his "illegality" theory. He does so by claiming that "[i]t is undisputed that the parties agreed Plaintiff would not provide a Form W-9 as part of the settlement" and that Defendants would pay the entire settlement amount with no withholding. Pl.'s Obj. at 5. But that contention is not only disputed; Judge Fouratt's detailed factual findings expressly and repeatedly rejected it. *See, e.g.*, PFRD at p. 12. Plaintiff has not challenged any of those factual findings or the ample evidence supporting them. This too, is independently dispositive.

After scrutinizing the Agreement and considering all available evidence concerning its formation, Judge Fouratt found that Defendants never agreed to violate federal tax law. Indeed, Judge Fouratt "specifically" found that "nothing" in the "Agreement addressed whether Plaintiff would – or would not – be required to provide a Form W-9, or that he would or could be exempted from the federal law requiring a backup withholding if he refused to provide one." PFRD at p. 9. And even when Defendants' counsel told Plaintiff, before either party signed the Agreement, that "my client can pay the settlement amount without a W-9," there was no suggestion that anyone agreed to violate the law. *Id.* at p. 6, 12, 20. As Judge Fouratt correctly found, "although Plaintiff and Mr. Terepka agreed that Plaintiff would not have to provide a Form W-9, they did *not* agree that Plaintiff's refusal to provide one would not trigger any tax consequences." *Id.* at p. 12 (emphasis in original). In fact, "Plaintiff and Mr. Terepka neither discussed nor agreed whether the backup withholding requirement would or would not apply to the settlement payment" and "the parties had no agreement that IRS requirements would (or would not be) a factor in their settlement." *Id.*. Moreover, Judge Fouratt found that Defendants specifically referred Plaintiff to Form W-9 and its associated instructions that discuss the withholding on the first page. *Id*. Here again, all of those well-supported factual findings stand unchallenged.

Judge Fouratt is not the first federal judge to reject arguments of the sort Plaintiff has made here. Similar arguments were soundly rejected in *Amana Glob. Co. v. King Cnty.*, 2023 WL 4998838, at *4 (W.D. Wash. Aug. 4, 2023) and *Childers v. Receivables Performance Mgmt. LLC*, 2013 WL 1944511, at *1 (W.D. Wash. May 9, 2013).[3]

In *Amana*, the parties reached an agreement on the material terms of a settlement, only to have the plaintiff attempt to back out at the last minute because he did not want to provide a W-9. 2023 WL 4998838 at *2. The court ultimately enforced the settlement, finding that "income tax liability on a settlement payment is determined by law, not by the settlement contract, regardless of whether [the payor] reports the payment based on a W-9 or forwards backup withholding to the IRS." *Id*. at *4. That court further stated that the plaintiff's "failure to anticipate the income tax consequences of the settlement contract—or disagree[] with [the payor] as to what the income tax consequences are—does not nullify the settlement contract as formed." *Id*.

The same is true here. Even if Plaintiff had a subjective belief that he could refuse to provide a W-9 and avoid backup withholding—which Judge Fouratt rightly rejected as not credible[4]—his subjective mindset is irrelevant to the Settlement Agreement's enforceability. PFRD at p. 22. That is especially true here because, as Judge Fouratt found, "Plaintiff could have

---

[3] Plaintiff's extensive reliance on *Nellis v. Farmers Ins. Co. of Ariz.*, 272 P.3d 143, 151 (N.M. Ct. App. 2011) is misplaced. That case did not even involve a claim that the insurance contracts at issue were unenforceable or illegal. 272 P.3d 143. Indeed, the word "illegal" does not appear once in the entire opinion. *See id. Nellis* instead was a class action in which policy holders claimed an insurance company overcharged for premiums, and the primary issue on appeal was whether certain fees constituted "premiums" under the insurance code. *Id.* at 149.

[4] Plaintiff testified at the hearing that, prior to signing the Agreement, he did not fully understand the tax consequences of refusing to provide a W-9 because he did not "read the fine print" of the Agreement. PFRD at p. 12. Based on his close observations of Plaintiff's demeanor, however, Judge Fouratt rejected that testimony as not credible, and found that "Plaintiff was aware of and understood the Form W-9 and its associated instructions" before signing the Agreement. *Id.*at p. 12 & n.14.

– but did not – request that [the Agreement] be amended to clarify either (a) that the parties agree that he need not provide a Form W-9, or (b) that Defendants would *not* deduct a backup withholding as a consequence for Plaintiff not providing a Form W-9." *Id.* at p. 9.

*Childers* is likewise instructive. 2013 WL 1944511. As Judge Fouratt stated, "[j]ust like Plaintiff here, Mr. Childers incorrectly argued that all of the money should have been paid to him and none of it remitted to the IRS," which "[t]he *Childers* court squarely rejected."[5] PFRD at p. 23 (cleaned up). So "[a]lthough it may be true that the settlement did not require the plaintiff to provide his TIN or a Form W-9, that could not relieve the defendant of the independent responsibility under the tax code to undertake backup withholding when paying the settlement without a TIN." *Id.* (quotations omitted) (alteration in original). Here too, Defendants were required by federal law to deduct a backup withholding from the settlement payment if Plaintiff refused to provide a W-9. *Id.* at p. 20–21, 23. The Defendants never agreed to do otherwise. *Id.* at p. 12. And because the parties never agreed to do anything illegal, Plaintiff's objection has no merit and should be overruled. *See id.* at p. 12, 17–19, 21, 23.

## C. PLAINTIFF'S "ADDITIONAL ARGUMENT" ALSO FAILS.

On the last page of his Objection, Plaintiff includes a brief paragraph titled "Additional Argument" in which he argues, without elaboration, that the Defendants "breached the agreement,

---

[5] For this reason, Plaintiff's severability argument (Pl.'s Obj. at 9) is wrong. Even if part of the Agreement was illegal—which it is not—the general rule is to sever illegal provisions and enforce the rest of the contract, unless it is practically impossible to do so. *See generally Garcia v. Bd. of Regents of Univ. of New Mexico*, 373 P.3d 998, 1003 (N.M. Ct. App. 2016) (reasoning "There is no benefit to the public to be gained by imposing an additional penalty (the avoidance of an otherwise valid settlement agreement) on litigants who mistakenly settle on a tax arrangement that is inconsistent" with federal law). Here, any supposed agreement relieving Plaintiff of the duty to provide a W-9 and exempt him from backup withholding could easily be severed from the Agreement without impacting its material terms. Indeed, Judge Fouratt found the issue of backup withholding was immaterial to the Agreement overall. PFRD at p. 24–25.

or materially misrepresented the terms of the agreement." Pl.'s Obj. at 10. Here, Plaintiff merely incorporates by reference briefs he filed prior to the issuance of the PFRD. As a threshold matter, Plaintiff's "additional argument" is not sufficiently specific. Fed. R. Civ. P. 72(b)(2); *see also United States v. One Parcel of Real Prop., Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996) (objections that are too general are waived). Setting that aside, the Court should overrule these objections for the reasons stated in the PFRD. That is especially true because Plaintiff does not object to any of the PFRD's factual findings, as discussed above. Plaintiff also does not object to independently dispositive conclusions in the PFRD, including that the backup withholding could not be a material breach of the settlement because Plaintiff conceded the settlement is taxable, so he'd have to pay taxes on the settlement amount anyway. PFRD at p. 24.

### D. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court overrule Plaintiff's objections to Judge Fouratt's Proposed Findings and Recommended Disposition.


Dated: March 5, 2024

<div style="margin-left:40%">

**WATSTEIN TEREPKA LLP**
*/s/ Alexander D. Terepka*
Alexander Terepka (admitted *pro hac vice*)
David Meadows (admitted *pro hac vice*)
1055 Howell Mill Road, 8th Floor
Atlanta, GA 30318
alex@wtlaw.com
dmeadows@wtlaw.com

**ATKINSON, BAKER & RODRIGUEZ, P.C.**

*/s/ Owen Barcala*
Clifford K. Atkinson
catkinson@abrfirm.com
Owen Barcala

</div>

obarcala@abrfirm.com
201 Third Street NW, Suite 1850
Albuquerque, New Mexico 87102
(505) 764-8111

*Attorneys for Innovative Financial Partners,*
*LLC and Josh Benson*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served via the Court's electronic case management and filing system, CM/ECF on this 5th day of March 2024.

*/s/ Owen Barcala*
Owen Barcala